1  Heather Conniff, Esq. (State Bar Number 294153)
   hc@shegerianconniff.com
2  Cortney Shegerian, Esq. (State Bar Number 296457)
   cs@shegerianconniff.com
3  Levon Derkalousdian, Esq. (State Bar Number 334658)
   SHEGERIAN CONNIFF LLP
4  2041 Rosecrans Ave, Suite 355
   El Segundo, California 90245
5  Telephone: (310) 322-7500
   e-Fax: (844) 721-5217
6
   Attorneys for Plaintiff,
7  FRANCY GROSSO

8         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9       **FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

10

11 FRANCY GROSSO                    ) Case No.: 21STCV19162
                                    )
12        Plaintiff,                )
                                    ) **PLAINTIFF FRANCY GROSSO**
13 vs.                              ) **COMPLAINT FOR DAMAGES FOR:**
                                    )
14 GRUMA CORPORATION dba            ) **(1) DISCRIMINATION ON THE BASIS**
   MISSION FOODS, DANIEL           )     **OF SEX/GENDER IN VIOLATION**
15 JIMENEZ, and DOES 1 to 100,      )     **OF FEHA;**
   inclusive,                       )
16                                  ) **(2) SEXUAL HARASSMENT IN**
        Defendants.                 )     **VIOLATION OF FEHA;**
17                                  )
                                    ) **(3) RETALIATION FOR**
18                                  )     **COMPLAINING OF**
                                    )     **DISCRIMINATION AND/OR**
19                                  )     **HARASSMENT ON THE BASIS OF**
                                    )     **SEX/GENDER IN VIOLATION OF**
20                                  )     **FEHA;**
                                    )
21                                  ) **(4) DISCRIMINATION ON THE BASIS**
                                    )     **OF DISABILITY IN VIOLATION**
22                                  )     **OF FEHA;**
                                    )
23                                  ) **(5) HARASSMENT ON THE BASIS OF**
                                    )     **DISABILITY IN VIOLATION OF**
24                                  )     **FEHA;**
                                    )
25                                  ) **(6) RETALIATION FOR**
                                    )     **COMPLAINING OF**
26                                  )     **DISCRIMINATION AND/OR**
                                    )     **HARASSMENT ON THE BASIS OF**
27                                  )     **DISABILITY IN VIOLATION OF**
                                    )     **FEHA;**
28                                  )

---

**(7) FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF FEHA;**

**(8) FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS;**

**(9) VIOLATION OF LABOR CODE § 1102.5;**

**(10) WRONGFUL CONSTRUCTIVE TERMINATION OF EMPLOYMENT IN VIOLATION OF PUBLIC POLICY (LABOR CODE § 1102.5, FEHA);**

**(11) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION IN VIOLATION OF FEHA;**

**(12) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

**DEMAND FOR JURY TRIAL**

Plaintiff, FRANCY GROSSO, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, FRANCY GROSSO ("Plaintiff" or "Grosso"), whose employment with defendant GRUMA CORPORATION dba MISSION FOODS ("Defendant" or "Mission") was wrongfully terminated.  Plaintiff brings this action against defendant for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

///

///

# PARTIES

1.   *Plaintiff:*   Plaintiff FRANCY GROSSO is, and at all times mentioned in this Complaint was, a resident of the County of San Bernardino.

2.   *Defendants:*   Defendant Mission is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Defendant Daniel Jimenez ("Jimenez") is, and at all times mentioned in this Complaint was, a resident of the County of San Bernardino.

3.   *Doe defendants:*   Defendants Does 1 through 100 are sued under fictitious names pursuant to Code of Civil Procedure section 474.  Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

4.   *Relationship of defendants:*   All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i).  All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision of, one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the

alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

5. Defendant Mission both directly and indirectly employed plaintiff as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

6. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

7. *Plaintiff's hiring:* Grosso was hired as a Packer in the Fry Department in November of 2020 in Mission's factory shortly after immigrating to the U.S. Her job duties included packing and lifting up to five pounds of boxes in a constant motion on the factory line, and worked Monday through Friday from 9:30 p.m. to 5:30 a.m.

8. *Plaintiff's protected status and activity:*

    a. Plaintiff is a female.

    b. Plaintiff suffered from a work place injury on her hands and right wrist.

    c. Plaintiff made complaints of discrimination and harassment.

9. *Defendant's adverse employment actions and behavior:*

    a. On Grosso's second day at the factory, a woman named Anna Williams ("Williams") was training her. She was instructed to carry boxes of chips, transfer it to the line, seal it, and do the same motion every three seconds. At some point during her training, Williams left Grosso on her own. After a few hours, Grosso's hands began to hurt, especially her right hand. From her wrist to her finger tips, Grosso felt a shooting pain

PLAINTIFF FRANCY GROSSO'S COMPLAINT FOR DAMAGES

until she noticed a bulge and bruising on her right hand. At first, she did not say anything because she was a new employee and certainly could not risk losing the very first job she had in America. After a few more hours, she kept dropping the bags and boxes due to the excruciating pain she was under.

b.   When her hands completely gave out, she notified Williams. Williams switched her to another part of the line—where she still had to lift heavy bags—even though her hands were visibly bruised. Williams said, ***"That's okay, we all feel that way."*** In fact, the part of the line Williams moved her to was even worse because of the speed with which Grosso was expected to work.

c.   Shortly after, Williams moved Grosso back to the same position where she injured her hands. Williams intimidated her because she started to complain and make fun of Grosso to the other employees, saying things like, ***"Ha! These young kids don't know anything."***

d.   After a few more hours, Grosso approached Maria (last name unknown), who was her supervisor in the evening. She informed Maria she could not grab the bags or boxes because they were too heavy and causing her pain in both of her hands. At that point, her right hand was still swollen and bruised. Maria looked at Grosso and in an accusatory tone said, ***"This has never happened before."***

e.   Shortly after, Maria informed a nurse named Mírene (last name unknown) who worked for the company about Grosso's hands and provided her with an ice-pack.

f.   The next day, on November 13, 2020, Mírene came in to see Grosso. At that time, her right hand was still swollen and had turned purple. Mírene provided her with some paperwork and placed her on "light duty," assigning her job restrictions as follows: no lifting anything five pounds or greater and putting ice on her hand during her breaks. Mírene also advised Grosso to complete hand exercises and apply ice on her hands every two hours for fifteen minutes while at home. She then provided Grosso with bandages and lotion.

g.   For about a week, Grosso completed "light duty," which included helping

PLAINTIFF FRANCY GROSSO'S COMPLAINT FOR DAMAGES

others on the line and sweeping the floors. However, after about another week, Maria informed her that she will be working on the taco line. While this did not include as much lifting, Grosso was still required to lift boxes and bags at a fast pace before her hands fully healed. While at the taco line, Grosso reported to the taco line manager, Maria Isabel (last name unknown).

h.   During the last week of November 2020, Grosso was supposed to see Mírene again to assess her condition and determine whether she was able to return to regular duty. However, Maria informed Grosso that Mírene had cleared her to return to regular duty on the chips line. Mírene did not even see Grosso before "clearing" her. In fact, Mírene had not seen Grosso since her injury. Grosso tried to seek more clarification, but Maria was exhaling deeply, rolling her eyes, and using a stern voice when speaking to her.

i.   On or about December 1, 2020, Grosso contacted Mírene and Maria about her concerns of going back to the chips line on regular duty. She asked Mírene if she can check her right hand again because she was still in pain. However, Mírene never responded and Grosso continued to work regular duty without ever seeing Mírene again.

j.   For the entire month of December, Grosso was forced to lift heavy boxes while her hands were still in excruciating pain, especially her right hand. She didn't know who else to speak to because Maria was clearly annoyed with her, and she didn't want to put her job in jeopardy any further. Defendant clearly failed to engage in the interactive process or provide her with a reasonable accommodation.

k.   In early January, 2021, Grosso felt sick and notified Maria and HR that she was going to get tested for COVID-19 on January 4, 2021.

l.   On January 5, 2021, Grosso learned she was positive for COVID-19 and thereafter fell extremely ill. She suffered from all of the symptoms, including cough, congestion, fatigue, muscle aches, chills, loss of smell and taste, and fever. As a result, she was required by the CDC to quarantine for a minimum of two weeks. She promptly sent HR her positive results and was placed on a two-week leave of absence. Throughout her leave, Grosso was worried that she would be fired for taking time off, even though she had

no other choice.

      m.  Grosso suffered from COVID-19 while her right hand was still in pain. By the time she returned to work on January 15, 2021, her right hand had not improved and was still in unbearable pain.

      n.  As a result of Maria's frustration and Mírene's negligence, Grosso made an appointment to see her own doctor on January 22, 2021. Her doctor gave her work restrictions as follows: no lifting anything five pounds or more for two weeks. She was also provided with a hand brace that Grosso had to wear while working.

      o.  Later that night on January 22, 2021, when Grosso went to work, she was looking for Maria to provide her with her doctor's note and request accommodations. Due to Covid-19, this doctor's note was sent to Grosso electronically and she needed help printing it out. However, Maria was not there so she approached another manger named Lidia (last name unknown). Grosso attempted to speak to her when Lidia shouted at Grosso in an annoyed and authoritative tone, ***"Go to the line."*** Grosso gently started to explain that she needed to be on light duty per her doctor's orders. Lidia angrily asked, ***"Why did you go to your own doctor? You can't go to your own doctor because Mírene is handling your case. You don't have a choice, get it?"*** Grosso tried to explain that Mírene did not help her and in fact made her condition worse. However, Lidia again abruptly cut her off and said, ***"You better go to HR now."*** Grosso stated that she already tried to go to HR before speaking to her, but the door was closed and no one answered. Lidia then told her to wait and stormed off.

      p.  After about twenty minutes, Lidia called Grosso into her office, where another manager was present. Grosso did not know who this manager was, but she noticed they both seemed upset. She tried to explain her condition and that she had a doctor's note, which she needed help printing out. However, both Lidia and the other manager disregarded her and told her, ***"Since you haven't talked to HR or Mírene, you need to punch out with your card and go home."*** Grosso was intimidated because they were both yelling. Lidia then continued and said, ***"You were wrong to see your personal doctor***

*without seeing or talking with our company nurse.*" Grosso felt scared, coerced and extremely uncomfortable and on the verge of tears.

q.   The other manager then started asking Grosso personal questions about her background and prior jobs. Grosso reiterated that she just wants her doctor's orders followed so she can work. Lidia then said, **"To be honest with you, there is nowhere for you to work if you can't carry more than five pounds."** However, Grosso had been on light duty in the past and was able to complete other jobs in the factory. She felt like they were trying to get rid of her for her disability and requesting accommodations.

r.   From then on, Grosso returned to work on normal duty regardless of her accommodations and was forced to violate her restrictions in order to keep her job. Neither HR nor any of her supervisors followed her accommodations outlined by her doctor. Instead, Grosso was forced to continue working with her injured hand, and as a result was never fully able to heal. To this day, Gross's right hand and wrist are in pain.

s.   Since Grosso started at Mission, she was constantly in fear that she was going to lose her job because of the way her managers and HR reacted to her injury. However, things only became worse when Jimenez began to sexually harass her.

t.   Beginning on or about December 27, 2020, Jimenez began to constantly sexually harass Grosso.

u.   On multiple occasions, Jimenez told Grosso, **"Oh wow, you're really pretty."** Jimenez constantly made comments like this about her appearance.

v.   On one occasion, he told her, **"You're SO pretty,"** as he stared at her body up and down in an obvious and exaggerated way while either leering at her or licking her lips.

w.   On multiple occasions, he shouted **"Culona"** at her, which means **"big ass"** in Spanish.

x.   Grosso frequently caught him **staring at her butt with his eyes widened and a smirk stretched across his face.**

y.   While Grosso was at her station working on the line, **she constantly noticed**

1    *Jimenez winked at her while licking his lips.*

2        z.   On or about the end of December 2020, Grosso was drinking water when

3    Jimenez approached her from behind as he put his groin on top of her buttocks and

4    whispered in her ear, ***"If you were my girlfriend, I would BANG you all day long."***

5    Grosso froze and was shocked. She told him to stop and to leave her alone. She also noticed

6    that his sexual advances were becoming more and more aggressive as she started to fear

7    that he would sexually assault her.

8        aa.   On another occasion in January 2021, he told her, ***"Work is so HARD,"*** while

9    looking down at his crotch and thrusting his pelvis back and forth.

10       bb.   Grosso was disgusted, offended, upset and extremely uncomfortable every

11   time Jimenez made unwelcome comments, but she felt trapped. She felt like she had

12   nowhere to turn given management was already showing their disdain towards her as an

13   employee and she didn't want to do anything to further upset them. Instead, Grosso tried

14   to take things into her own hands and repeatedly told Jimenez to stop and leave her alone.

15       cc.   However, Jimenez never stopped and his sexual advances instead escalated.

16   He became infatuated with her and began to openly talk about ***sex and porn, and showed***

17   ***her lewd pornographic videos on his phone while at work***.

18       dd.   Jimenez frequently talked to Grosso about ***porn*** and ***watching porn***.

19       ee.   On at least ten occasions, Jimenez asked Grosso ***if she liked women in a***

20   ***sexual and suggestive tone***, which he typically asked after he ***told her how much he likes***

21   ***lesbian porn, while raising his eyes, looking at her and smiling.***

22        ff.   Jimenez asked Grosso on at least fifteen occasions, ***"What kind of porn do***

23   ***you watch?"*** and ***"What kind of porn do you like?"***

24       gg.   On at least five occasions while Grosso was working the line, Jimenez stood

25   right next to her and started ***showing her pictures of naked women on his phone.*** Grosso

26   was disgusted and felt sick to her stomach, but she could not leave the line. Though she

27   always told him she did not want to see those pictures, he showed her anyway.

28       hh.   On one occasion, Jimenez ***played a pornographic video of a man and a***

*woman having sex on his phone and showed it to her saying, "Do you like that? This is what I like."* Grosso wanted to vomit because she felt violated. She was shocked and couldn't find the words to tell him to stop because she was so stunned. Instead, she ignored him, hoping he would stop the video and go away.

ii.   In addition to these sexual advances and wildly inappropriate conduct, Jimenez constantly tried to get Grosso alone and begged her to do drugs with him. He constantly asked her, *"When are we gonna smoke weed together?"* Grosso always told him that she does not smoke.

jj.   On several occasions, Jimenez asked Grosso to clock out for him so he could smoke weed. Grosso vehemently denied these requests.

kk.   Grosso frequently smelled marijuana when he was around, and he would ask her, *"You want some?"*

ll.   When Grosso clocked out of her shifts at the time-clock machine, he always rushed over to her and asked, *"Do you want to smoke weed with me in my car?"* Again, Grosso always said no.

mm.   Grosso grew tired of Jimenez's harassment and lewd conduct. She didn't feel safe at work and was constantly looking over her shoulder because he was always around her. Grosso felt completely isolated because all of her managers gave her the cold shoulder since the issues with her injury. Grosso continued to tell Jimenez to stop and leave her alone, and tried her best to ignore him.

nn.   Jimenez was relentless and soon began to inappropriately touch Grosso without her consent. On one occasion, Jimenez was carrying a box and instead of going around Grosso to place it down, he lifted the box with both hands from behind Grosso, moving his hands in front of her body. *Grosso was trapped in between his hands and Jimenez pushed his entire body against her backside.* Grosso was startled and abruptly told him that he could have gone around and told him to "stop" as she tried to wiggle away from him.

oo.   On at least *five* other occasions, Jimenez *came up behind or beside Grosso*

*and forcibly hugged her*. Grosso pushed him away each time and sternly told him not to touch her. Jimenez always just laughed.

pp.   Grosso confided in one of her co-workers, Bicky (last name unknown), about Jimenez's sexual harassment. After almost each instance of sexual harassment, she'd complain to Bicky and say, *"That guy doesn't understand the word no."*

qq.   On or about January 2021, Grosso approached the evening/early morning manager, Francis ("Francis"). She asked him what the process is of making a complaint against an employee who was bothering her. He explained it to her and asked her who she wanted to complain about. However, Grosso was apprehensive and had cold feet. She told him she was just curious and Francis did not ask her any more questions.

rr.   Jimenez's sexual harassment continued all the way until February 2021. As Jimenez's harassment became more aggressive, Grosso became more distressed. She was afraid of coming into work almost every day because of Jimenez, and was especially afraid of being alone with him. She was distracted at work and couldn't focus on her job because she was constantly trying to avert his advances. To avoid Jimenez, she spent her breaks in the dirty and putrid women's locker room. On many occasions, Grosso had to pretend she was still at work after clocking out because she did not want Jimenez to follow her outside the building. She was anxious during every shift, and every time she saw him she thought it would be the day he would assault her.

ss.   Grosso was distressed, scared, and uncomfortable at work. The environment was extremely hostile and she had been losing sleep for a while. Eventually, she became so detached and was constantly anxious, which her husband began to notice. Grosso had not told her husband about Jimenez because she was embarrassed and ashamed that she was in this situation and concerned how he would react. However, she could no longer hide it form him and eventually told him everything.

tt.   After the encouragement from her husband, Grosso decided to complain about Jimenez to her managers. On February 9, 2021, Grosso approached Francis and reminded him about the employee who was bothering her. She told him about Jimenez

and all of the sexually inappropriate comments he made and conduct he engaged in. Francis informed her that he was going to file a report.

uu.   The following day, Jimenez was throwing chips at Grosso and blowing kisses at her to try to get her attention. It became clear to Grosso that Francis had not taken any action to stop Jimenez from sexually harassing her.

vv.   As a result, Grosso submitted a written complaint to Francis, outlining a few instances of Jimenez's sexual harassment. Francis told Grosso he would talk to HR and commence an investigation.

ww.   After her written complaint, Grosso was sent back to the line and Jimenez was at his working station, right behind her. He was leering at her the entire time and at one point walked past her and banged his hand on the table to get her attention. This occurred at around three o'clock in the morning.

xx.   Regardless of her complaints, Grosso was still working with and around Jimenez. Mision failed to protect Grosso from his harassment and the hostile work environment.

yy.   On or about February 18, 2021, Grosso texted an HR representative, Marilyn (last name unknown) to follow up on the so-called investigation. She asked about the investigation and stated it had been over a week since she complained, ***during which time she was still working with him.*** She expressed how uncomfortable she was around him and wanted it to stop. Marilyn responded, ***"Hello, I'm sorry no one has followed up with you. Unfortunately, I don't have access that kind of information. I only handle Covid-19 cases. I will let the [ladies] form HR know about your message. Once again, I apologize. Regards."*** Grosso did not understand why no one from HR knew about her complaints and started becoming more anxious

10.   *Defendant's constructive termination of Plaintiff's employment:*

a.   On February 19, 2021, HR Manager, Mary Manriquez ("Manriquez") called Grosso on a Friday morning to have a meeting about her complaints. When she arrived at work to meet with Manriquez, three other people were there: a manager named Frederico

1  (last name unknown), Mírene, and another HR representative (name unknown). They

2  asked her about Jimenez, and Grosso explained Jimenez's harassment as described above.

3  She also explained that she was eating her lunch in the smelly women's locker room to

4  avoid him, which she thought was unfair. She further expressed frustration that she was

5  still forced to work with Jimenez even after complaining to Francis.

6       b.   The following Monday, February 22, 2021, Grosso went to work and did not

7  see Jimenez. She was hopeful that HR fired Jimenez, but had not received any updates. In

8  fact, she did not receive any updates for that entire week. Every day that week, she was

9  felt anxious, not knowing if she would run into Jimenez since she had not heard back from

10  HR.

11       c.   On March 3, 2021, Grosso text messaged Manriquez about the status of the

12  investigation and if Jimenez was fired. Manriquez responded, ***"We are in the investigation***

13  ***and I need to speak to you again."***

14       d.   The next day, on March 4, 2021, Grosso met with Manriquez, Frederico,

15  Mírene, and another HR representative. They asked her, ***"How do you feel if Danny comes***

16  ***back here?"*** Grosso was shocked and didn't know what to say. She was hesitant and stated

17  that she would not be comfortable with that.

18       e.   They then asked her if she was okay with changing her schedule or

19  transferring to another department. Grosso stated that would be useless because he would

20  still be around her and there would nevertheless be overlap in their shifts. She also found

21  it unfair for her to have to change her schedule or transfer to another department when

22  Jimenez was the one sexually harassing her. She felt like they were retaliating against her

23  and not taking her complaints seriously and explained her feelings as much as she could.

24  Grosso was intimidated and felt like she was holding back from what she really wanted to

25  say. Toward the end of the conversation, Manriquez told her, ***"Maybe this was just a***

26  ***misunderstanding on [Jimenez's] end."*** Grosso could not believe they thought him

27  making sexual comments about her appearance, making sexual advances, showing her

28  porn, and touching her without her consent was a "misunderstanding."

f.   Grosso left the meeting in tears. When her husband picked her up, she was crying incessantly which had become a common occurrence when she was being picked up from work but this time she was also hyperventilating. Grosso suffered from an anxiety attack because she felt like HR and her managers completely disregarded her and failed to protect her against Jimenez.

g.   As a result of HR's inadequate responses to her multiple complaints and intolerable working conditions, Grosso was constructively terminated. She was afraid of going back into the workplace around Jimenez, especially now that he knew she had complained about him. On March 4, 2021, Grosso texted Manriquez and informed her that she could no longer work for Mission under the current circumstances. Manriquez did not respond.

h.   Grosso suffers from extreme emotional distress as a result of Jimenez's sexual harassment and Mission's disregard toward her complaints. From the moment she started working at Mission, she was met with contempt, and its actions became more egregious when they failed to protect her from Jimenez. Her working conditions were extremely intolerable and aggravated.

i.   Grosso now suffers from anxiety and depression, sleepless nights, sweats, racing heart, negative thoughts about herself and living in constant fear, which she never had an issue with prior to her employment with Mission. In addition, feels shame, embarrassment, and betrayal. She cannot sleep and has night terrors about Jimenez touching her. Her condition has become so debilitating that she began seeking treatment from a psychiatrist on March 9, 2021. She has been prescribed medication to help with her anxiety, depression, and insomnia, and is expected to continue treatment.

11.   *Economic damages:*   As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

12. *Non-economic damages:*  As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

13. *Punitive damages:*  Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages. Moreover, defendants' conduct was ratified by a managing agent, officer, and/or director.

a. *Malice:*  Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of her sex, gender, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:*  In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of her sex, gender, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:*  In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive her of legal rights.

14.  *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

15.  *Exhaustion of administrative remedies:*  Prior to filing this action, plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-sue letter.

## FIRST CAUSE OF ACTION
### Violation of FEHA (Government § 12900, *et seq.*)
### (Discrimination on the Basis of Sex/Gender)—Against
### Defendant Mission and Does 1 to 100, Inclusive

16.  The allegations set forth in paragraphs 1 through 15 are re-alleged and incorporated herein by reference.

17.  Plaintiff's sex, and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in defendants' decision to terminate plaintiff's employment, not to retain, hire or otherwise employ plaintiff in any position, and/or to take other adverse job actions against plaintiff.

18.  Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.  Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's sex, and/or other protected characteristics, in violation of Government Code section 12940(a);

b.  Failing to take all reasonable steps to prevent discrimination, harassment, and/or retaliation based on sex, in violation of Government Code section 12940(k).

19.  As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses

of earnings and other employment benefits.

20.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

21.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

22.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, and fraudulent manner, entitling plaintiff to punitive damages against defendants.

## SECOND CAUSE OF ACTION

## Violation of FEHA (Government § 12900, *et seq.*) (Sexual Harassment)—Against All Defendants, and Does 1 to 100, Inclusive

23.   The allegations set forth in paragraphs 1 through 22 are re-alleged and incorporated herein by reference.

24.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's sex, and/or other protected characteristics, in violation of Government Code section 12940(j);

b.   Failing to take all reasonable steps to prevent discrimination, harassment, and/or retaliation based on sex, in violation of Government Code section 12940(k).

25.   As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings

and other employment benefits.

26.   As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

27.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

28.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, and fraudulent manner, entitling plaintiff to punitive damages against defendants.

### THIRD CAUSE OF ACTION
### Violation of FEHA (Government § 12900, *et seq.*)
### (Retaliation for Complaining of Discrimination and/or
### Harassment on the Basis of Sex/Gender)—Against
### Defendant Mission, and Does 1 to 100, Inclusive

29.   The allegations set forth in paragraphs 1 through 28 are re-alleged and incorporated herein by reference.

30.   Plaintiff's sex, and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in defendants' decision to terminate plaintiff's employment, not to retain, hire or otherwise employ plaintiff in any position, and/or to take other adverse job actions against plaintiff.

31.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's sex, and/or other protected characteristics, in violation of Government Code

section 12940(a);

      b.  Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's sex, and/or other protected characteristics, in violation of Government Code section 12940(j);

      c.  Failing to take all reasonable steps to prevent discrimination, harassment, and/or retaliation based on sex, in violation of Government Code section 12940(k);

      d.  Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination, in violation of Government Code section 12940(h).

32.  As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

33.  As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

34.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

35.  Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, and fraudulent manner, entitling plaintiff to punitive damages against defendants.

///
///
///
///

# FOURTH CAUSE OF ACTION

## Violation of FEHA (Government Code § 12900, *et seq.*
## (Disability Discrimination)—Against Defendant Mission,
## and Does 1 to 100, Inclusive

36.   The allegations set forth in paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

37.   Plaintiff's actual, perceived, and/or history of disability and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, to refuse to accommodate plaintiff, to refuse to engage in the interactive process, and/or to take other adverse job actions against plaintiff.

38.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(a);

b.   Failing to accommodate plaintiff's actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(m);

c.   Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n);

d.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(k);

e.   Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to

be free of discrimination, in violation of Government Code section 12940(h);

f.   Failing to provide plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against plaintiff for taking leave, in violation of Government Code section 12945.2.

39.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

40.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

41.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

42.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

## FIFTH CAUSE OF ACTION
### Violation of FEHA (Government Code § 12900, *et seq.*)
### (Disability Harassment)—Against All Defendants and
### Does 1 to 100, Inclusive

43.   The allegations set forth in paragraphs 1 through 42 are re-alleged and incorporated herein by reference.

44.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's actual, perceived, and/or history of physical disability

and/or other protected characteristics, in violation of Government Code section 12940(j);

b.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(k).

45.   As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

46.   As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

47.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

48.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, and fraudulent manner, entitling plaintiff to punitive damages against defendants.

## SIXTH CAUSE OF ACTION
### Violation of FEHA (Government Code § 12900, *et seq.*)
### (Retaliation for Complaining of Disability Discrimination
### and/or Harassment)—Against Defendant Mission, and
### Does 1 to 100, Inclusive

49.   The allegations set forth in paragraphs 1 through 48 are re-alleged and incorporated herein by reference.

50.   Plaintiff's actual, perceived, and/or history of disability and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, to refuse to accommodate plaintiff, to refuse to

engage in the interactive process, and/or to take other adverse job actions against plaintiff.

51.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(a);

b.   Failing to accommodate plaintiff's actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(m);

c.   Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n);

d.   Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(j);

e.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of disability, in violation of Government Code section 12940(k);

f.   Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination, in violation of Government Code section 12940(h);

g.   Failing to provide plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against plaintiff for taking leave, in violation of Government Code section 12945.2.

52.   As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

-23-

PLAINTIFF FRANCY GROSSO'S COMPLAINT FOR DAMAGES

53.   As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

54.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

55.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

## SEVENTH CAUSE OF ACTION

### Violation of FEHA (Government Code § 12940(a), (i), (m), (n)) (Failure to Provide Reasonable Accommodation)—

### Against Defendant Mission, and Does 1 to 100, Inclusive

56.   The allegations set forth in paragraphs 1 through 55 are re-alleged and incorporated herein by reference.

57.   At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on defendants.  This statute requires defendants to provide reasonable accommodations to known disabled employees. Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

58.   Defendants wholly failed to attempt any reasonable accommodation of plaintiff's known disability.  Defendants used plaintiff's disability and her need to take medical leave as an excuse for terminating plaintiff's employment.

59.   Plaintiff believes and on that basis alleges that her disability and the need to accommodate her disability were substantial motivating factors in defendants' termination of her employment.

60.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

61.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

62.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

63.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

## EIGHTH CAUSE OF ACTION

### Failure to Engage in Interactive Process (Government Code § 12940(a), (i), (m), (n))— Against Defendant Mission, and Does 1 to 100, Inclusive

64.   The allegations set forth in paragraphs 1 through 63 are re-alleged and incorporated herein by reference.

65.   At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on defendants.  This statute requires defendants to engage in a timely, good-faith interactive process to accommodate known disabled employees.  Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

66.   Defendants wholly failed to engage in a timely, good-faith interactive process with plaintiff to accommodate her known disabilities.  Instead, defendants terminated plaintiff's employment in part because of her disabilities.

67.   Plaintiff believes and on that basis alleges that her disabilities was a motivating

factor in defendants' termination of her employment.

68.   As a proximate result of defendants' willful, knowing, and intentional miscon-duct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

69.   As a proximate result of defendants' willful, knowing, and intentional miscon-duct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

70.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

71.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

## NINTH CAUSE OF ACTION

### (Violations of Labor Code § 1102.5, *et seq.*— Against
### Defendant Mission, and Does 1 to 100, Inclusive

72.   The allegations set forth in paragraphs 1 through 71 are re-alleged and incorpo-rated herein by reference.

73.   At all relevant times, Labor Code section 1102.5 was in effect and was binding on defendants.  This statute prohibits defendants from retaliating against any employee, including plaintiff, for raising complaints of illegality.

74.   Plaintiff raised complaints of illegality while she worked for defendants, and defendants retaliated against her by discriminating against her, harassing her, and taking adverse employment actions, including employment termination, against her.

75.   As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

76.   As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

77.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages against defendants.

## TENTH CAUSE OF ACTION

**(Wrongful Termination of Employment in Violation of Public Policy ( Labor Code § 1102.5, FEHA, Government Code § 12900, *et seq.*)— Against Defendant Mission, and Does 1 to 100, Inclusive**

78.   The allegations set forth in paragraphs 1 through 77 are re-alleged and incorporated herein by reference.

79.   Defendants terminated plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws.  Specifically, plaintiff's employment was terminated in part because of plaintiff's protected status (sex, gender, and/or good faith complaints) and because plaintiff engaged in protected activities.  These actions were in violation of FEHA and the California Constitution and California Labor Code section 1102.5.

80.   As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

81.   As a result of defendants' wrongful termination of plaintiff's employment, plaintiff has suffered general and special damages in sums according to proof.

82.   Defendants' wrongful termination of plaintiff's employment was done intentionally, in a malicious, despicable, oppressive, fraudulent manner, entitling plaintiff to punitive damages.

83.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.,* plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

## ELEVENTH CAUSE OF ACTION

**(Violation of FEHA (Government Code § 12940(k) (Failure to Prevent Discrimination, Harassment, and Retaliation)— Against Defendant Mission, and Does 1 to 100, Inclusive**

84.   The allegations set forth in paragraphs 1 through 83 are re-alleged and incorporated herein by reference.

85.   At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Prior to filing the instant Complaint, plaintiff filed a timely administrative charge with the DFEH and received a right-to-sue letter.

86.   During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff's being treated less favorably because of plaintiff's protected status (*i.e.,* her sex, gender, and/or good faith complaints). During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in unjustified employment practices against employees in such protected classes. During the course of plaintiff's employment, defendants failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the bases of sex, gender, and/or other protected statuses or protected activities.

87.   Plaintiff believes and on that basis alleges that her sex, gender, and/or good faith complaints, and/or other protected status and/or protected activity were substantial motivating factors in defendants' employees' discrimination and retaliation against her.

88.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

89.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

90.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

91.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, entitling plaintiff to punitive damages against defendants.


## TWELFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress—Against All
### Defendants and Does 1 to 100, Inclusive

92.   The allegations set forth in paragraphs 1 through 91 are re-alleged and incorporated herein by reference.

93.   Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted severe and outrageous misconduct and caused plaintiff extreme emotional distress.

94.   Defendants were aware that treating plaintiff in the manner alleged above, including depriving plaintiff of her livelihood while she was suffering from an actual, perceived, and/or history of disability, would devastate plaintiff and cause plaintiff extreme hardship.

95.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a

result of being emotionally distressed.

96.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

97.   Defendants' misconduct was committed intentionally, in a malicious, oppressive manner, entitling plaintiff to punitive damages.

## PRAYER

WHEREFORE, plaintiff,   FRANCY GROSSO, prays for judgment against defendants as follows:

1.   For general and special damages according to proof;

2.   For exemplary damages, according to proof;

3.   For pre-judgment and post-judgment interest on all damages awarded;

4.   For reasonable attorneys' fees;

5.   For costs of suit incurred;

6.   For such other and further relief as the Court may deem just and proper.

ADDITIONALLY, plaintiff, FRANCY GROSSO demands trial of this matter by jury.  The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated:  May 21, 2021                SHEGERIAN CONNIFF LLP

By: _____
Heather Conniff, Esq.

Attorneys for Plaintiff,
FRANCY GROSSO

PLAINTIFF FRANCY GROSSO'S COMPLAINT FOR DAMAGES